IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RICHARD E. SANDLASS,

           Plaintiff,

      v.

SEARS, ROEBUCK & CO.,

           Defendant.

                      *

                      *

                      *                  Civil Action No.: RDB 06-771

                      *

                      *

                      *

*     *     *     *     *     *     *     *     *     *     *     *     *

## <u>MEMORANDUM OPINION</u>

This action arises from a Complaint filed by Plaintiff Richard Sandlass ("Sandlass" or "Plaintiff") against Defendant Sears, Roebuck & Co. ("Sears" or "Defendant"). The Complaint asserts that Mr. Sandlass was wrongfully discharged for filing a claim for workers' compensation benefits. Pending before this Court is Defendant's Motion for Summary Judgment. (Paper No. 32.) Defendant seeks entry of judgment in its favor on grounds that there is no evidence to support a finding that Plaintiff was terminated because he filed a workers' compensation claim. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, Defendant's Motion for Summary Judgment is GRANTED.

## <u>BACKGROUND</u>

This Court reviews the facts of this case in the light most favorable to the party opposing

the motion.[1]  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

From April 13, 1992 to December 4, 2003, Plaintiff was employed by Sears in various capacities.

In early 2002, Mr. Sandlass was promoted to fill the position of Assistant Store Manager for

Operations at the Sears location in the Eastpoint Mall.  (Def.'s Summ. J. Mem., Ex. 1 ("Sandlass

Dep.") at 43:1.)  On January 15, 2003, the position of Store General Manager at the same location

was filled by Keith Kiah.[2]

While Mr. Kiah and Mr. Sandlass initially got along "very well," their professional

relationship deteriorated over time.  (Sandlass Dep. 45:4.)  Mr. Sandlass attributes this

deterioration to, among other things, Mr. Kiah's lack of experience:

> Keith Kiah came from the background of human resources. . . . [A]ll he knew, was
> human resources.  He didn't know anything about the stores.  He was in one store
> for a short period of time and came to our store. . . . He didn't have any real
> knowledge and everybody would come to me when they had a problem.

(Sandlass Dep. 46: 8-14).  Mr. Sandlass believed that Mr. Kiah "didn't want [Mr. Sandlass] to get

any better."[3]  (*Id*. at 48: 14-15.)  Plaintiff also believed that his relationship with Mr. Kiah was

strained by Mr. Kiah's fiancé speaking highly of Mr. Sandlass.  As a result, Mr. Sandlass

concluded that Mr. Kiah perceived him as a "threat" (*Id*. at 106:10).

On April 1, 2003, Mr. Sandlass' wife died after a protracted battle with cancer.  Shortly

---

[1]      This Court has previously summarized the facts of this case in its Memorandum
Opinion of November 21, 2006.

[2]      Mr. Kiah and Mr. Sandlass previously worked together at the White Marsh Mall
Sears location.  Mr. Kiah was Mr. Sandlass' supervisor at both the White Marsh Mall and
Eastpoint Mall locations.

[3]      In April 2003, Mr. Sandlass was rated the best Assistant Store Manager for
Operation in the sales district.  Mr. Sandlass felt that Mr. Kiah's lack of congratulations for this
accomplishment was another symptom of their difficult professional relationship.  (*See* Sandlass
Dep. 49:7-50:6.)

thereafter, Mr. Sandlass testified that Mr. Kiah called him and stated: "While you are burying your wife, do one of two things.  Step down or resign."  (*Id.* at 50:17-18.)   While he was on leave, Mr. Kiah asked Dawn Blevins when Mr. Sandlass would return to work "[e]very other day."[4] (Dawn Sandlass Dep. 22:11.)  Mr. Sandlass returned to work within thirteen days of his wife's passing.

On May 14, 2003, approximately one month after Mr. Sandlass returned to work, a female employee at the Eastpoint Mall location had a heart attack at the store.  Mr. Sandlass administered cardiopulmonary resuscitation until medical help arrived.  Unfortunately, the employee died before such help arrived.

On June 3, 2003, Plaintiff saw his primary care physician, Dr. Jeorgia Peters.  During this visit, Plaintiff complained that "he was feeling more stressed out, . . . anxious, and . . . depressed." (Def.'s Summ. J. Mem., Ex. 7 ("Dr. Peters Dep.") 15:3-5.)  Mr. Sandlass also told Dr. Peters that "he had some anxiety attacks."  (Dr. Peters Dep. 15:8.)  Dr. Peters issued a certificate to Plaintiff allowing him to take a medical leave until June 23, 2003.  From June 3, 2003 to December 2003, Dr. Peters continued to issue similar certificates excusing Mr. Sandlass from work.  Between June 3, 2003 and late July 2003, Mr. Kiah asked Dawn Sandlass about Plaintiff's whereabouts "about six or seven times." (Dawn Sandlass Dep. 28:3-4.)

During a portion of this leave period, Mr. Sandlass received temporary disability benefits pursuant to Sears' disability benefits coverage.  On June 9, 2003, he was informed by the disability provider that he needed to submit a statement describing the nature of his injury in

---

[4]        In June 2005, Dawn Blevins married Mr. Sandlass.  (Def.'s Summ. J. Mem., Ex. 7 ("Dawn Sandlass Dep.") 22:15-17.)  This Court refers to Ms. Blevins by her married name throughout this Opinion.

order to continue receiving payments.  (Def.'s Summ. J. Mem., Ex. 11.)   Mr. Sandlass, however,

did not remit the requested form.  (Sandlass Dep. 68:10-15.) As a result, his temporary benefits

were terminated on June 24, 2003.  (Def.'s Summ. J. Mem., Ex. 12.)

On July 10, 2003, Mr. Sandlass filed a workers' compensation claim for stress and anxiety

with the Maryland Workers' Compensation Commission.[5]  (Def.'s Summ. J. Mem., Ex. 13.)

On July 28, 2003, Mr. Kiah sent a letter to Mr. Sandlass informing him of his rights under

the Family Medical Leave Act ("FMLA") and an application for leave under the FMLA.  After

receiving these forms, Plaintiff called Mr. Kiah and said, "Don't put me on personal leave.  I

already filed [w]orkers' [c]omp."[6]  (*Id.* at 81:20-21.)  During this conversation, Mr. Kiah told him

that he did not know that Plaintiff had filed a workers' compensation claim.  (*Id.* at 82:2-3.)  After

the conversation, Mr. Sandlass testified that he "didn't sign the [FMLA] forms," (*id.* at 82:11), and

"threw them away," (*id.* at 82:8-9).  Although the packet contained the phone number of a human

resources representative who could discuss Plaintiff's FMLA rights as they related to his workers'

compensation claim, Mr. Sandlass did not consider contacting Defendant's human resources

personnel.  (*Id.* at 94:1-7.)  It is undisputed that Mr. Sandlass simply refused to complete the

FMLA forms.

On October 5, 2003, Mr. Kiah's employment with Sears ended.[7]  Chris Polischeck was

---

[5]        On December 4, 2003, the Maryland Workers' Compensation Commission
ordered that Plaintiff receive weekly payments of $564.  (Def.'s Summ. J. Mem., Ex. 26.)  On
February 2, 2005, Defendant agreed to make a $34,350 lump sum payment to Plaintiff to settle
all workers' compensation claims with Plaintiff.  (Def.'s Summ. J. Mem., Ex. 27.)

[6]        Mr. Kiah testified that he does not recall the substance of this conversation.  (Kiah
Dep. 54:9).

[7]        Mr. Kiah and Mr. Sandlass' testimony differs on the reasons for Mr. Kiah's
departure. (*Compare* Sandlass Dep. 98:11-13 ("He was terminated ") *with* Kiah Dep. 9:13-14

hired to replace him as Store General Manager.  Although he knew Mr. Kiah socially, Mr. Polischeck "wasn't filled in on any of [Mr. Sandlass'] situation" (Def.'s Mem. Summ. J., Ex. 15 ("Polischeck Dep.") 41:2-3).  Mr. Polischeck "wasn't even aware that [Mr. Sandlass] worked [at the Eastpoint Mall store], any longer." (Polischeck Dep 32:15-16.)  In addition, Mr. Polischeck did not realize that Mr. Sandlass "was still on . . . the books, or still on leave, of some sort" until a month after he came to the Sears location at Eastpoint Mall.  (*Id.* at 32:17-18.)

On November 14, 2003, Mr. Polischeck sent a letter to Mr. Sandlass once again informing him of his rights under FMLA and again directing him to fill out the appended forms.  This letter warned that "[a]ny absences after [November 29, 2003] may result in disciplinary action . . . up to and including termination."  (Def.'s Summ. J. Mem., Ex. 23.)  Again, Mr. Sandlass did not sign and return the forms because his attorney advised him that "everything goes to Sears' lawyer and Sears' Workers' Comp. insurance company."  (Sandlass Dep. 100:12-14).

On November 17, 2003, Plaintiff called Mr. Polischeck and stated that his attorney had advised Sears to "do what they have to do."  (Def.'s Summ. J. Mem., Ex. 24.)  Following this conversation, in late November 2003, Mr. Polischeck received a phone call from Sears' Human Resources Office.  During this phone conversation, Mr. Polischeck "keyed the official termination, based on [Sears Human Resources] walking [Mr. Polischeck] through how to do it" (Polischeck Dep. 41:21-22.)  Pamela Flower, a Sears Manager of Associate Relations, testified that she approved Plaintiff's termination because he would not return the completed FMLA leave forms.  (Def.'s Summ. J. Mem., Ex. 28 ¶¶8-10.)  On December 4 or 5, 2003, Plaintiff was advised that he

---

("[I] became a store manager in East Point, Maryland, from 2003, and that's it.")  It is not a material issue here, however.

was officially terminated.

On March 2, 2006, Mr. Sandlass filed a one-count Complaint against Defendant in the Circuit Court for Harford County, Maryland.  The Complaint asserts that Plaintiff was wrongfully discharged for requesting workers' compensation benefits.  On March 24, 2006, Defendant removed this case to this Court pursuant to 28 U.S.C. §§ 1441 and 1446, asserting that this Court had jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332.  On November 21, 2006, this Court denied Plaintiff's Motion to Remand.  *See Sandlass v. Sears*, No. RDB-06-771 (D. Md. Nov. 21, 2006) (holding that while Plaintiff's claim "arose under" the workers' compensation laws of the State of Maryland, Plaintiff waived the right to remand after the thirty-day period described in 28 U.S.C. § 1447(c) elapsed).  On February 2, 2007, Defendant filed the subject Motion for Summary Judgment. (Paper No. 32.)

## STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold*, Inc., 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).  However, the opponent must bring forth evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  "Once the movant has established the absence of any genuine issue of material fact, the opposing party has an obligation to present some type of evidence to the court demonstrating the existence of an issue of fact." *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 422 (4th Cir. 1999)).  Rule 56(e) also requires that "affidavits submitted by the party defending against a summary-judgment motion contain specific facts, admissible in evidence, from an affiant competent to testify, 'showing that there is a genuine issue for trial.'"  *Id.* (quoting 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2740, 399 (3d ed. 1998)).  The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment. *Anderson*, 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences."  *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md.  2001) (citations omitted).  Indeed, this Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial.  *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

## DISCUSSION

### I.      The Complaint

As noted above, Plaintiff's Complaint asserts a single cause of action against Defendant. Plaintiff contends "Defendant terminated of [sic] Plaintiff's employment solely and directly because Plaintiff filed for [workers' compensation]."  (Compl. ¶ 22.)

### II.     Motion for Summary Judgment

Defendant argues that "[t]here is no evidence in this record which would suggest that Sears' decision to terminate [Mr.] Sandlass' employment was motivated . . . by the workers' compensation claim [Mr.] Sandlass filed." (Def.'s Summ. J. Mem. 19.)  In response, Plaintiff contends that when he informed Mr. Kiah of his workers' compensation claim against Sears, Mr. Kiah took actions that ultimately caused Mr. Sandlass' termination.  (Pl.'s Opp. 13.)

As the jurisdiction of this Court is based on diversity of citizenship, pursuant to 28 U.S.C. § 1332, this Court applies state law, including state common law.  *See*, *e.g.*, *Erie RR v. Tompkins*, 304 U.S. 64 (1938).  In Maryland, "an employment contract of indefinite duration, that is, at will can be legally terminated at the pleasure of either party at any time." *Adler v. Am. Standard Corp.*, 432 A.2d 464, 467 (Md. 1981); *see Page v. Carolina Coach Co.*, 667 F.2d 1156, 1158 (4th Cir. 1982) (per curiam) (citing *Adler*, 432 A.2d 464).  Maryland law recognizes an exception to the "at will" doctrine when an employee is terminated in violation of public policy.  *Adler*, 432 A.2d at 473.  To sustain a claim for wrongful discharge, an employee must show that (1) he was discharged; (2) the basis for his discharge violates some clear mandate of public policy; and (3) there is a nexus between the employee's conduct and the employer's decision to fire the employee. *See Wholey v. Sears Roebuck & Co.*, 803 A.2d 482, 489 (Md. 2002).

The Maryland Court of Appeals has clearly held that the discharge of an employee "solely because that employee filed a workers' compensation claim" violates public policy. *Ewing v. Koppers Co., Inc.*, 537 A.2d 1173, 1175 (Md. 1988).  This Court has previously recognized that the firing of an employee because of the filing of a workers' compensation claim is a clear violation of public policy.  *Pope v. Bethesda Health Center, Inc.*, 628 F.Supp 797, 801 (D. Md. 1986).  It is clear, in viewing the facts in the light most favorable to Plaintiff, that he was discharged and that he contends that his discharge was as a result of his filing of a workers' compensation claim.  However, Mr. Sandlass cannot create a genuine issue of material fact "through mere speculation." *Shin* 166 F.Supp.2d at 375.  Mr. Sandlass must present evidence upon which a reasonable jury could find that there is a nexus between his filing of a workers' compensation claim and his termination by Sears.

This Court finds that Plaintiff's claim for wrongful discharge fails as a matter of law, due to the fact that Plaintiff fails to present sufficient evidence of a material fact from which any reasonable jury could find a nexus between his filing of a workers' compensation claim and his termination.  As noted above, to prevail on a claim for wrongful discharge, a plaintiff must establish a nexus between the employee's conduct and the employer's decision to fire the employee.  *Wholey*, 803 A.2d at 489; *see also Pollard v. High's of Balt., Inc.*, 281 F.3d 462, n.7 (4th Cir. 2002) (noting the need for "evidence [of] retaliatory animus for filing a worker's compensation claim").  In this case, Plaintiff relies on the theory that Mr. Kiah set into motion a series of events that inexorably led to Mr. Sandlass' discharge in order to satisfy the nexus requirement.  (*See* Pl.'s Opp. 13 ("[Mr.] Kiah knew by placing Plaintiff on personal leave he had sealed his fate.").)

-9-

Plaintiff's theory fails to establish the required nexus for three reasons.  First, the undisputed facts do not establish that Mr. Sandlass' termination was motivated by retaliatory animus.  Instead, they show that Mr. Polischeck "wasn't filled in on any of [Plaintiff's] situation" when he replaced Mr. Kiah.  (Polischeck Dep. 41:2-3.)  As a result, Mr. Sandlass' claim that he was wrongfully discharged in retaliation for filing a workers' compensation claim is wholly unsupported.  While the record shows discord between himself and Mr. Kiah, there is simply nothing to indicate that Mr. Polischeck acted out of retaliatory animus for filing a workers' compensation claim when terminating Plaintiff.  Second, even if this Court assumes that Mr. Kiah set a chain of events into motion, those events did not inexorably lead to Plaintiff's termination.  For example, Plaintiff could have signed and returned the FMLA leave forms that Mr. Polischeck mailed to him on November 14, 2003 or returned to work on November 29, 2003 as requested.  However, apparently relying on the advice of counsel, Plaintiff neither returned to work nor filled out the forms.  (*See* Sandlass Dep. 100:13-14 ("I called my attorney and he said that everything goes to Sears' lawyer and Sears' Workers' Comp insurance company.").)  Based on these facts, a reasonable jury could not find that Mr. Kiah's actions inevitably led to Plaintiff's termination.

Third, a reasonable jury could not find that a nexus existed because the only evidence Plaintiff relies on is insufficient to establish a genuine issue of material fact.  While Plaintiff asserts that "[Mr.] Kiah knew his action . . .  would ultimately result in the termination of Plaintiff," (Pl.'s Opp. 9), summary judgment motions require testimony based on personal knowledge.  *See*, *e.g.*, FED. R. CIV. P. 56(e) (emphasizing that "supporting and opposing affidavits shall be made on personal knowledge"); *cf. Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989) (noting that "a 'gut feeling' . . . renders [a] deposition of too little evidentiary value

to create, all by itself, a genuine issue of material fact concerning the motive for [an employee's] discharge"). Here, Plaintiff relies on statements about Mr. Kiah's thoughts and motivations to support his "chain of events" theory. These statements are inadmissable because they are beyond the ambit of his personal knowledge.

Indeed, the breadth of Mr. Sandlass' allegations is somewhat self-defeating. While claiming in his one-count complaint that he was wrongfully discharged for requesting workers' compensation benefits, Mr. Sandlass has claimed that Mr. Kiah "did not like him" and was "jealous" of him. (Pl.'s Opp. 9.) The events giving rise to these allegations occurred well before Plaintiff's claim for workers' compensation benefits was filed in July of 2003.

In addition, even viewing the facts in the light most favorable to Plaintiff, Mr. Sandlass failed to produce specific facts to demonstrate that he was terminated solely and directly because of his workers' compensation claim. In order to maintain a cause of action for wrongful discharge, "an employee must allege that he or she was discharged solely and directly because of filing for benefits . . . or that his or her termination violated a recognized rule of law." *Kern v. S. Balt. Gen. Hosp.*, 504 A.2d 1154, 1159 (Md. Ct. Spec. App. 1986); *see also* Md. Lab. & Empl. Code Ann. §9-1105(a). In *Kern*, the plaintiff was terminated for excessive absences from work due to an injury for which he was seeking workers' compensation benefits. The Maryland Court of Special Appeals found that the indirect relationship between termination and a claim for workers' compensation benefits demonstrated by the plaintiff was insufficient to establish a claim for wrongful discharge. *See Id.* at 1159 (explaining that "To sustain a wrongful discharge action under Maryland's workers' compensation statute, an employee must allege . . . he . . . was discharged solely and directly because of filing for [workers' compensation benefits]."). Here, the

record does not establish that Plaintiff was terminated solely and directly because of his workers' compensation claim.  The undisputed facts indicate that Sears' Human Resources personnel decided to terminate Plaintiff because he failed to fill out the FMLA forms that were provided him on two occasions, not because he filed a workers' compensation claim.  (*See* Def.'s Summ. J. Mem., Ex. 28 ¶¶ 6-10.)  As a result, this Court finds that the record would not allow a reasonable jury to find that Plaintiff was terminated solely and directly because of his workers' compensation claim.

In sum, the undisputed facts fail to support a nexus between the filing of Plaintiff's workers' compensation claim and his termination.  In addition, Plaintiff does not present any evidence of sufficient probative value upon which a reasonable jury could find that he was terminated solely and directly because of his workers' compensation claim.  Through mere speculation or inferences Mr. Sandlass has failed to create any genuine issue of material fact. Accordingly, Defendant is entitled to summary judgment as a matter of law.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED. A separate order follows.


Dated: June 14, 2007                          /s/_____
                                              Richard D. Bennett
                                              United States District Judge